## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SARA E. ACHENBACH,** | **CIVIL ACTION** |
| **Plaintiffs,** | |
| **v.** | |
| **ATLANTIC SPECIALTY INSURANCE** | **NO. 17-534** |
| **COMPANY,** | |
| **Defendant.** | |

## MEMORANDUM OPINION

While on a work trip in Wisconsin, Plaintiff was severely injured when a truck crashed into the rental car in which she was riding. Because the truck driver did not have insurance, Plaintiff sought uninsured motorist insurance through her employer's insurance provider. The insurer-Defendant, however, declined her claim. Plaintiff now brings this suit arguing, in the alternative, that either (1) she was entitled to uninsured motorist insurance under the policy Defendant signed with Plaintiff's employer, or (2) she was entitled to relief based on misrepresentations Defendant made about the availability of coverage during the claims-adjustment period. Defendant moves to dismiss Plaintiff's Complaint for failing to state a claim. For the foregoing reasons, Defendant's motion will be granted in part and denied in part.

### I.     Facts

Plaintiff, Sara Achenbach, resides in Berks County, Pennsylvania. At the time of the accident, she worked as a Senior Field Application Specialist for the Wisconsin-based firm, Promega Corporation. In February of 2013, Plaintiff flew to Madison, Wisconsin to attend a national sales meeting at Promega's headquarters. While there, Plaintiff was involved in a car accident when a truck driven by Kyle Ziebarth rear-ended the rental car in which Plaintiff was riding. Plaintiff was sitting in the passenger seat of the rental car driven by fellow Promega

employee, Cynthia Benning, who had rented the car from Midwestern Wheels, Inc. d/b/a Avis Rent a Car ("Midwestern Wheels") through Promega.

Plaintiff suffered serious physical injuries and sought to recover damages related to those injuries. Because at the time of the accident Ziebarth was uninsured, Plaintiff was eligible for certain uninsured motorist benefits. The primary uninsured motorist coverage available to Plaintiff was through Benning's rental agreement with Midwestern Wheels. The policy offered coverage up to $25,000 through the insurance carrier Scottsdale Insurance/National Casualty Company ("National Casualty"). But because Plaintiff's damages exceeded the coverage offered by National Casualty, she also sought secondary coverage through Promega's insurance policy with Defendant, Atlantic Specialty Insurance Company. The Promega policy provided coverage of up to $1 million for uninsured motorist benefits.

From July 2013 to October 2015, Plaintiff, through her counsel, exchanged emails with Defendant about her eligibility for secondary uninsured motorist coverage.[1] The gist of those communications were: Defendant informed Plaintiff that the coverage was to compensate her for pain and suffering; Defendant sent Plaintiff a copy of the insurance contract; Plaintiff informed Defendant that her damages exceeded the limit of the National Casualty policy; Defendant gave "permission" for Plaintiff to settle with National Casualty; and, Defendant confirmed that she did not need to bring suit against Ziebarth or any other party "to preserve" her uninsured motorist claim.

Based on her communications with Defendant, on February 5, 2016, Plaintiff settled her claim with National Casualty for the policy limit of $25,000. She also decided against filing suit

---

[1] Copies of these emails are attached to the Complaint and a copy of the insurance contract is attached to the Motion to Dismiss, all of which may be considered in deciding the Motion. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").

against Ziebarth.  On May 25, 2016, Plaintiff demanded payment of the full amount of Defendant's policy in settlement of her outstanding claim.  Then, on June 10, 2016, Plaintiff received a letter from Defendant informing her that she was not eligible for uninsured motorist insurance and, thus, Defendant was denying her claim.

Plaintiff then brought claims against Defendant for (1) breach of contract, (2) bad faith, and (3) promissory estoppel.  Defendant removed the action to federal court and moved to dismiss all claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Threadbare" recitations of the elements of a claim supported only by "conclusory statements" will not suffice. *Id.* at 683.  Rather, a plaintiff must allege some facts to raise the allegation above the level of mere speculation.  *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 176 (3d Cir. 2010) (citing *Twombly*, 550 U.S. at 555).  Nevertheless, when analyzing a motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).   In analyzing a motion to dismiss, legal conclusions are disregarded, well-pleaded factual allegations are taken as true, and a determination is made as to whether those facts state a "plausible claim for relief." *Id.*

### III.  Discussion

### A.  Choice of Law

Before delving into the merits of the dispute, it is necessary to determine which state's law governs this matter.  Defendant argues that Wisconsin law applies to the bad faith and promissory estoppel claim; Plaintiff contends Pennsylvania law governs.[2]  A federal court sitting in diversity must apply the choice-of-law-rules of the forum state—here, Pennsylvania. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007).  Pennsylvania has adopted a "flexible approach to choice of law" that requires "evaluating qualitatively" the relationship each forum has to the controversy.  *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 806 (Pa. 1964).

The choice of law analysis is a two-part inquiry.  First, a court must determine whether there is a "real conflict between the potentially applicable laws." *Hammersmith*, 480 F.3d at 230.  A real conflict exists when each state's interests "would be impaired by the application of the other's law." *Hammersmith*, 480 F.3d at 230.  If no conflict exists, "then the district court. . . may refer interchangeably to the laws of the states whose laws potentially apply." *Huber*, 469 F.3d at 74.  If, on the other hand, a real conflict exists, a court moves on to the second part of the analysis.  At this stage, a court must "weigh the contacts" each state has with the dispute "on a qualitative scale according to their relation to the policies and interests underlying the particular issue" and "determine which state has the greater interest in the application of its law." *Id.* at 230-31 (internal alternations and quotations marks omitted).

### 1.  Bad Faith

Although Pennsylvania law on bad faith is largely consistent with Wisconsin law, a conflict exists as to whether a breach of contract by an insurer is a fundamental prerequisite for a

---

[2] Parties do not argue that Wisconsin and Pennsylvania law governing the contract claim conflict, so the Court "may refer interchangeably to the laws" of both states.  *Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir. 2006).

first-party bad faith claim. In *Brethorst v. Allstate Prop. & Casualty Ins. Co.*, 798 N.W.2d 467 (Wis. 2011), the Wisconsin Supreme Court concluded that "first-party bad faith cannot exist without some wrongful denial of benefit under the insurance contract." *Id.* at 480. Indeed, the *Brethorst* Court explicitly considered and rejected the "opposite viewpoint" that permitted recovery for bad faith "even if the court ultimately determines that [the] policy did not cover [the] claim." *Id.* at 480-81 (quoting Stephen S. Ashely, *Bad Faith Actions: Liability & Damages*, § 5A:02 at 2 (2d ed. 1997)). On the other hand, Pennsylvania's bad faith statute, 42 Pa. C.S.A. § 8371, has been interpreted to provide that when "bad faith is asserted as to conduct beyond a denial of coverage, the bad faith claim is actionable as to that conduct regardless of whether the contract claim survives." *Gold v. State Farm Fire & Cas. Co.*, 880 F. Supp.2d 587, 598 (E.D. Pa. 2012); *see also Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.,* 244 F. App'x. 424, 435 (3d Cir. 2007). So, while a party may bring a viable bad faith claim under Pennsylvania law based on the insurer's lack of investigation or failure to communicate even when the purported insured is not covered by the policy *see Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999), such a claim is not viable under Wisconsin law, *Brethorst*, 798 N.W.2d at 481 (rejecting such a hypothetical).

Here, the main thrust of Plaintiff bad faith claim is that Defendant wrongfully denied her coverage under the policy. Plaintiff also alleges, however, that Defendant acted in bad faith by failing to investigate her claim and making misrepresentations to her during the claim-adjustment process. These allegations do not require Plaintiff being covered by the policy to sustain a bad faith claim. Thus, a real conflict exists because Pennsylvania's interest in providing a first-party bad faith cause of action based on Defendant's failure to investigate and misrepresentations "would be impaired by the application" of Wisconsin's law, and vice-versa. *Hammersmith*, 480

F.3d at 230.

Because a real conflict exists, the Court must weigh the contacts each state has with the dispute to determine whether Wisconsin or Pennsylvania law applies. While the Court finds it a close call, the quantity and quality of contacts weigh in favor of applying Wisconsin law.

Defendant's briefing emphasizes the quantity of contacts Wisconsin has with the dispute: "This dispute concerns the interpretation of an insurance policy that was issued and delivered to a Wisconsin company, Promega, following the negotiations with a Wisconsin producer, AON Risk Services Inc. of Wisconsin . . . . Plaintiff seeks coverage under the Wisconsin insurance policy for an automobile accident that occurred in Wisconsin and involved Wisconsin vehicles . . . while Plaintiff was on business in Wisconsin for her Wisconsin company, the named insured under the Wisconsin policy."

At the same time, not all of the foregoing contacts are as weighty as Defendant suggests. Neither Promega nor AON Risk Services Inc. of Wisconsin is a party to this dispute. In addition, Defendant has only limited contacts with Wisconsin—it is incorporated under the laws of the State of New York with a principal place of business in Massachusetts. While the underlying accident surely occurred in Wisconsin, the contacts inquiry in an insurance dispute concerns "the contract and not the underlying tort." *Hammersmith*, 480 F.3d at 228 .

Nor are Pennsylvania's contacts with the dispute insignificant. Plaintiff is a resident of Pennsylvania and suffered harm as a result of Defendant's alleged bad faith to her in Pennsylvania. *3039 B St. Assocs., Inc. v. Lexington Ins. Co.*, 740 F.Supp.2d 671, 676 (E.D. Pa. 2010), *aff'd,* 444 F. App'x 610 (3d Cir. 2011) (noting the state enacted Section 8371 to "afford[] its citizens a legal remedy following bad faith insurance disputes."). More specifically, Defendant's communications with Plaintiff, which are part of the conduct that makes up

Plaintiff's bad faith claim, were directed at Pennsylvania.

On balance, however, the quantity and quality of Wisconsin's interests prevail. The thrust of Plaintiff's bad faith claim is that Defendant failed to honor the terms of the contract. Significant weight, then, should be afforded to Wisconsin's "interest in prescribing the standards that will govern the insurance contracts purchased by its residents"—that is, Wisconsin-based Promega. *Melville v. Am. Home Assur. Co.*, 584 F.2d 1306, 1313-14 (3d Cir. 1978). Further, the policy was negotiated in Wisconsin by a Wisconsin-based insurance broker, AON Risk Services Inc. of Wisconsin. To the degree Plaintiff's claim is premised on Defendant's failure to investigate, that too weighs in favor of Wisconsin because any investigation into the accident, or lack thereof, would have occurred in Wisconsin where the accident took place. Thus, that the policy at issue was negotiated, signed, and delivered in Wisconsin to a Wisconsin-based insured regarding an accident in Wisconsin outweighs Pennsylvania's interest in protecting its citizens from certain instances of bad faith. Wisconsin law will therefore apply to the bad faith claim.

### A. Promissory Estoppel

No real conflict exists between Wisconsin and Pennsylvania law governing promissory estoppel. Both states have adopted Section 90 of the Restatement (Second) of Contracts as the law of the state. *See Murphy v. Burke*, 311 A.2d 904, 908 (Pa. 1973); *Stack Const. Co. v. Cont'l Const. Corp.*, 277 N.W.2d 769, 771 (Wis. 1979). Nevertheless, Defendant argues a conflict exists because whereas "Wisconsin courts have consistently held that reliance damages or specific performance can be an appropriate remedy for promissory estoppel . . . the Pennsylvania Supreme Court has noted that reliance damages alone are the appropriate remedy for promissory estoppel claims."

Defendant construes the remedies available under Pennsylvania law too narrowly. True

enough, Pennsylvania courts have noted in dicta that recovery on a promissory estoppel claim "is ordinarily limited to recovery of amounts lost and expected in reliance on the promise." *Lobolito, Inc. v. N. Pocono Sch. Dist.*, 755 A.2d 1287, 1293 n.10 (Pa. 2000) (quoting *Banas v. Matthews Int'l Corp.*, 502 A.2d 637, 648 n.12 (Pa. Super. 1985)). That recovery is "ordinarily" limited to reliance damages, however, does not mean reliance damages are the only remedy available. Reflecting the principle that "[e]stoppel is a flexible doctrine that is applied as the equities between the parties demand", *In re Estate of Nesbitt*, 533 A.2d 1015, 1021 (Pa. Super. 1987), Pennsylvania courts have permitted parties to recover compensatory damages on promissory estoppel claims. *See, e.g.*, *Travers v. Cameron Cty. Sch. Dist.*, 544 A.2d 547, 551 n.5 (Pa. Commw. 1988); *Shallenberger Const. Inc. v. Rath Builders Supply Inc.*, 59 Pa. D. & C.4th 328, 333 (Com. Pl. 2002). Thus, no actual conflict exists as to the remedies available for a promissory estoppel claim. Because no conflict exists, the Court "may refer interchangeably to the laws" of both states. *Huber*, 469 F.3d at 74.

## 1. Merits

### A. Breach of Contract

Plaintiff alleges that Defendant breached its contract with Promega by denying her claim for uninsured motorist benefits. Defendant, on the other hand, argues that the policy did not extend uninsured motorist benefits to rented vehicles. Thus, the claim boils down to a dispute over the terms of Defendant's policy with Promega.

The interpretation of a contract is a question of law. *Danbeck v. Am. Family Mut. Ins. Co.*, 629 N.W.2d 150, 153 (Wis. 2001); *see also Rourke v. Pa. Nat. Mut. Cas. Ins. Co.*, 116 A.3d 87, 91 (Pa. Super. 2015). The policy is construed to give effect to the intent of the parties as expressed in the language of the policy itself. *Danbeck*, 629 N.W.2d. at 153. Where the

language of the policy is plain and unambiguous, a court must enforce it as written. *Id.* To determine whether coverage exists for a claimed loss, a court must first determine whether the policy provides coverage for the claim set out in the complaint. *Preisler v. Gen. Cas. Ins. Co.*, 875 N.W.2d 136, 143 (Wis. 2014); *see also Consol. Rail Corp. v. ACE Prop. & Cas. Ins. Co.*, 182 A.3d 1011, 1026 (Pa. Super. 2018). If the policy does not cover the complaint's alleged claim, then the analysis ends there. *Preisler*, 875 N.W.2d at 143.

Here, the contract's plain terms limit uninsured motorist coverage to vehicles owned by Promega, which precludes Plaintiff from recovering because she was riding in a rented vehicle at the time of the accident. Defendant's policy with Promega provides a range of insurance "coverages," including, *inter alia*, liability insurance, collision coverage, and—as relevant here—uninsured motorist insurance. Each of the coverages extends only to a specified class of "covered autos," which are defined by the policy's Business Auto Coverage Form. So, for example, the policy's collision coverage covers "Owned 'Autos' Only," which is defined by the Business Auto Coverage Form as: "Only those 'autos' you own (and for Liability Coverage any 'trailers' you don't own while attached to power units you own). This includes those 'autos' you acquire ownership of after the policy begins."[3] Thus, any autos falling outside the scope of "Owned Autos,"—that is, any vehicles Promega did not own—would be ineligible under the policy for collision coverage.

As for Plaintiff's claim, the Promega policy limits uninsured motorist insurance to the class of covered autos defined as "Owned 'Autos' Subject To a Compulsory Uninsured Motorist Law." The policy defines the class as:

> Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorist Coverage. This includes those 'autos' you acquire ownership of after

---

[3] The "you" refers to Promega.

the policy begins provided they are subject to the same state uninsured motorist requirement.

By its plain terms, the policy extends coverage for uninsured motorist insurance only to those vehicles owned by Promega. Vehicles not owned by Promega, such as rental vehicles, are ineligible for uninsured motorist insurance.

That rented vehicles are excluded from coverage is reinforced by the fact that the policy does not extend uninsured motorist insurance to a class of covered autos called "Hired 'Autos' Only." The Business Auto Coverage Form defines this class to include "[o]nly those 'autos' you lease, hire, rent or borrow." By defining a class to include rental vehicles and not extending uninsured motorist insurance to that class, the terms of the policy unambiguously precludes rental vehicles from coverage for uninsured motorist insurance.

As noted, at the time of the crash, Plaintiff was a passenger in a vehicle rented by Promega through its employee. Under the terms of the policy, the rented vehicle was not a "covered auto" for the purposes of uninsured motorist insurance because it was not owned by Promega. Thus, neither the rented vehicle nor its passengers—that is, Plaintiff—fall within the coverage of the policy's uninsured motorist coverage.

Plaintiff argues that other language in the contract and Defendant's representations undermine the plain terms of the policy, but that is not so. First, Plaintiff argues language from the contract concerning the applicability of "Physical Damage Coverage" and "Liability Coverage" to rental vehicles "confirms the extension of some coverage to rental vehicles under" the policy. True enough, but that language does not affect the extension of uninsured motorist coverage to rented vehicles under the policy. Rather, the plain terms of the policy limit uninsured motorist coverages to vehicles owned by Promega, which does not include the vehicle in which Plaintiff was riding on the day of the accident. Similarly, Plaintiff's reliance on verbal

assurance from Defendant that the policy covered rental vehicles cannot change the plain and

unambiguous language of the policy. *Danbeck*, 629 N.W.2d at 153. Simply put, Plaintiff is not

covered under the policy and Defendant therefore did not breach the contract when it denied

Plaintiff's claim for uninsured motorist insurance.

### B.  Bad Faith

Because Plaintiff's contract claim fails, so too does her bad faith claim. Under Wisconsin

law, "some breach of contract by an insurer is a fundamental prerequisite for a first-party bad

faith claim against the insurer by the insured." *Dufour v. Progressive Classic Ins. Co.*, 881

N.W.2d 678, 691 (Wis. 2016).[4] Plaintiff has failed to establish that Defendant breached its

contract with Promega when it denied Plaintiff's claim for uninsured motorist insurance. Thus,

Plaintiff has failed to make out a *prima facie* claim for bad faith. Defendant's Motion to Dismiss

for failure to state a claim will therefore be granted.

### C.  Promissory Estoppel

Plaintiff argues that, even if she is not covered by the terms of the contract, she has a

viable claim for promissory estoppel. Promissory estoppel is a cause of action that "is designed

to prevent the injustice that results when a promisee is reasonably induced by, and relies upon,

some promise by a promisor that is broken." *C & K Petroleum Prod., Inc. v. Equibank*, 839 F.2d

188, 192 (3d Cir. 1988). To establish a claim for promissory estoppel, Plaintiff must allege

sufficient facts to support a conclusion that "(1) the promisor [made] a promise that [it]

reasonably expect[ed] to induce action or forbearance by the promisee, (2) the promise [did]

---

[4] To prevail on a bad faith claim, the insured must also establish "that there is no reasonable basis for the insurer to deny the insured's claim for benefits under the policy" and "that the insurer knew of or recklessly disregarded the lack of a reasonable basis to deny the claim." *Dufour*, 881 N.W.2d at 691 (quoting *Brethorst*, 798 N.W.2d at 479-80); *see also Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017) (same). Here, because Plaintiff fails to show that Defendant breached its contract with Promega, the bad faith claim fails as a matter of law and there is no need to inquire into whether Defendant acted with the requisite *mens rea* to support a bad faith claim under *Dufour* and *Rancosky*.

induce action or forbearance by the promisee, (3) and injustice can only be avoided by enforcing the promise." *Carlson v. Anrot-Ogden Mem. Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990).

Here, Plaintiff alleges sufficient facts to support a plausible, albeit limited, claim of promissory estoppel. Plaintiff alleges that the representations made by Defendant's employees as to the availability of uninsured motorist insurance during the claim-adjustment process amounted to a promise that she would be eligible to recover under Promega's policy. Further, Plaintiff alleges that, in reliance on those representations, she forewent other avenues of recovery—namely, initiating a suit against Ziebarth and settling her claim with National Casualty—to her detriment. Plaintiff claims that she suffered damages as a result of her reliance on Defendant's representations.

Defendant advances several arguments as to why Plaintiff's claim must fail, none of which are ultimately persuasive. First, Defendant argues that Plaintiff fails to allege facts sufficient to support a conclusion that Defendant made an express promise of coverage. The Third Circuit has held that a promissory estoppel claim must be based on an "express promise" from the promisor to the promisee. *C & K Petroleum Prod.*, 839 F.2d at 192.[5] Plaintiff alleges, however, that Defendant's employees "represented to Plaintiff Achenbach and Plaintiff's counsel that [uninsured motorist insurance] coverage was available to Plaintiff Achenbach." Plaintiff also references emails in which Defendant's claim adjusters represented that: "The commercial

---

[5] Neither the Pennsylvania nor the Wisconsin Supreme Courts have addressed whether an express promise is required for a viable promissory estoppel claim. *See Nabisco, Inc. v. Ellison*, 1994 WL 622136, at *6 (E.D. Pa. Nov. 8, 1994) (discussing Pennsylvania law); *Silberman v. Roethe*, 218 N.W.2d 723, 730 (Wis. 1974) (discussing whether an implied promise may support a promissory estoppel claim but deciding the issue on other grounds). While several Pennsylvania appellate courts have held that conduct, silence, or an implied promise will suffice, *see, e.g.*, *Rinehimer v. Luzerne Cty. Cmty. Coll.*, 539 A.2d 1298, 1306 (Pa. Super. 1988), Wisconsin state courts have left the issue largely unaddressed.

Here, in the absence of a decision from the Pennsylvania Supreme Court, the Court is bound by the decision of the Third Circuit in interpreting Pennsylvania law. *Nabisco*, 1994 WL 622136, at *7. Applying the *C&K Petroleum* "express promise" standard, however, does not create a "real" conflict between Pennsylvania and Wisconsin law because the Court concludes that Plaintiff has plead sufficient facts to support a conclusion that Defendant's representations constituted an express promise.

auto policy for Promega has [u]ninsured injury coverage. This coverage is for your pain and suffering that would have been covered by the at fault vehicle;" and "It is not necessary at this juncture to file litigation to preserve the [uninsured motorist] benefits." While it is a close call, the Court concludes the allegations are sufficient to support a conclusion that Defendant made an "express promise" that uninsured motorist coverage would be available to Plaintiff. *Cf. Fid. Nat'l Title Ins. Co. v. Craven*, 2016 WL 215068, at *8 (E.D. Pa. Jan. 19, 2016) (observing that "had [plaintiff] told [defendants] that she understood that she was covered under an errors and omissions policy, and had [defendants] stayed silent in the face of such a statement, [plaintiff] may have had a plausible claim" for promissory estoppel).

Second, Defendant argues that Plaintiff's reliance on Defendant's correspondence "was not reasonable as a matter of law." In promissory estoppel claims, the "reasonableness of a party's reliance is generally a question of fact reserved for the jury." *Roberts Tech. Grp., Inc. v. Curwood, Inc.*, 2015 WL 5584498, at *11 (E.D. Pa. Sept. 23, 2015) (citing *Massaro Ltd. P'ship (Park W. Two) v. Baker & Taylor Inc.*, 161 F. App'x 185, 189 (3d Cir. 2005)). While a district court may determine that a party's reliance is unreasonable as a matter of law, s*ee, e.g.*, *id.*, such a determination is best left for summary judgment. Indeed, none of the cases Defendant cites were decided at a motion to dismiss. *See Sugden v. Bock*, 641 N.W.2d 693, 695 (Wis. Ct. App. 2002) (summary judgment); *Cont'l Ins. Co. v. Alperin, Inc.*, 1998 WL 212767, at *1 (E.D. Pa. Apr. 29, 1998) (same); *Guardian Life Ins. Co. of Am. v. Zerance*, 479 A.2d 949, 951 (Pa. 1984) (reviewing verdict of bench trial). The Court therefore declines to decide that Plaintiff's reliance was unreasonable as a matter of law at this point in the litigation.

Third, Defendant argues that Plaintiff is precluded from pursuing a promissory estoppel claim because "an enforceable insurance agreement between the parties on the issue of uninsured

motorist benefits already exists." Defendant is correct that "[u]nder Pennsylvania law, an enforceable contract between two parties precludes relief for a claim of promissory estoppel." *W. Chester Univ. Found. v. MetLife Ins. Co. of Conn.*, 259 F.Supp.3d 211, 222 (E.D. Pa. 2017) (internal quotations omitted). Here, however, there is no enforceable contract between Plaintiff and Defendant; rather, Defendant and Promega have an enforceable contract that, as the above discussion explains, does not extend coverage to Plaintiff's claim. Because no contract exists between Plaintiff and Defendant, she is not precluded from maintaining a promissory estoppel claim.

Fourth, Defendant argues that "promissory estoppel is inapplicable when a party seeks to expand coverage beyond that clearly established in the policy."[6] Again, Defendant is correct that "promissory estoppel claims should not be used to modify an enforceable contract." *Isobunkers, L.L.C. v. Easton Coach Co.*, 2010 WL 547518, at *4 (E.D. Pa. Feb. 9, 2010). But, Plaintiff's claim is not that representations made by Defendant modified the agreement between Promega and Defendant.[7] Instead, the allegations are that Plaintiff suffered harm by relying on those representations and should be able to recover for that harm, which is a viable promissory estoppel claim.

Finally, Defendant argues that Plaintiff's promissory estoppel claim is not viable because the relief requested, enforcement of the Policy benefits, "far exceeds any injustice or change of position that Plaintiff is alleged to have suffered from" Defendant's representations regarding the policy's coverage. At this stage of the proceedings, however, Plaintiff needs only to plausibly

---

[6] Defendant's briefing, at times, conflates the separate doctrines of promissory estoppel and equitable estoppel. While equitable estoppel "cannot be used to create a liability for benefits not contracted for at all," *Artmar*, 148 N.W.2d at 643, promissory estoppel is a separate cause of action upon which relief can be granted.

[7] To the degree that is the basis of Plaintiff's claim, that argument is foreclosed. *See Isobunkers, L.L.C. v. Easton Coach Co.*, 2010 WL 547518, at *4.

allege that she took action in reliance on Defendant's promise and incurred some detriment as a result. *Carlson*, 918 F.2d at 416. Plaintiff has met that burden: In reliance on Defendant's representations, Plaintiff alleges she forewent legal action against Ziebarth, an alleged tortfeasor, for damages. *Cf. Third Nat. Bank & Tr. Co. of Scranton v. Rodgers*, 198 A. 320, 321 (Pa. 1938) ("The actual forbearance, or the promise to forbear to prosecute a claim on which one has a right to use is universally held to be a sufficient consideration."). Whether Plaintiff may ultimately recover on this theory remains an open issue.

In sum, Defendant's Motion to Dismiss will be granted as to Plaintiff's contract and bad faith claims and denied as to Plaintiff's promissory estoppel claim.

An appropriate order follows.

**BY THE COURT:**


**/s/Wendy Beetlestone, J.**
_____
**WENDY BEETLESTONE, J.**

**October 22, 2018**